IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

```
CLARA ORTIZ-ORTIZ, et al         *
                                 *
       Plaintiffs                *
                                 *
v.                               *        Civil No. 06-2152 (SEC)
                                 *
UNIVERSITY OF PUERTO RICO, et al *
                                 *
       Defendants                *
**********************************
```

**OPINION AND ORDER**

Before the Court is Defendants' Motion for Summary Judgment (Docket # 77), and Plaintiff's opposition thereto, accompanied by various other replies and sur-replies.[1] For the reasons set forth below, the Court will **GRANT** the Motion for Summary Judgment.

**Procedural Background & Material Facts**

Plaintiffs, Clara Ortíz-Cruz ("Ortíz"), her husband, José P. Burgos, and the Burgos-Ortíz Conjugal Partnership, currently seek relief under Title VII, 42 U.S.C. § 2000e, *et seq*, for discrimination on the basis of national origin. Ortiz also brings a claim under 42 U.S.C. § 1983. She is an employee at a publishing house operated by the University of Puerto Rico ("U.P.R."), a Co-Defendant in this case. Plaintiffs allege that Ortíz's supervisor at the Editorial of the University Of Puerto Rico ("the Editorial"), Manuel Sandoval ("Sandoval"), discriminated against her because she was Puerto Rican, by assigning more duties to her without increasing her compensation, by failing to promote her, and by harassing her.

Ortíz is suing the U.P.R.; her supervisor, Manuel Sandoval ("Sandoval"); the Finance Director of the Editorial, Mr. Héctor Stevenson ("Stevenson"); and the President of the U.P.R., Mr. Antonio García-Padilla ("García-Padilla"). Plaintiff avers that Sandoval made derogatory comments about Puerto Ricans, and that she complained of Sandoval's conduct with the U.P.R. Human Resources Department to no avail.

---

[1] See Dockets ## 77, 78, 79, 90, 91, 99, 112, 113, 115, 121, 122.

Plaintiffs further avers that Sandoval eventually hired Stevenson as a Finance Director, and that he delegated many of his duties to her without additional compensation, and humiliated her in front of other employees, saying that she was no longer a supervisor. Finally, Plaintiffs contend that on April, 2006, the U.P.R. hired another employee to perform part of the duties that were previously performed by her.

Plaintiffs filed the original complaint on November 17, 2006, and amended on April 4, 2007. See Dockets ## 1 & 20. Subsequently, this Court issued an Opinion & Order dismissing various of Plaintiffs' claims, including those brought for monetary relief against the U.P.R., and the individual defendants in their official capacity. Plaintiffs' claims pursuant to Puerto Rico Law 100, 22 P.R. Stats. Ann. 29, § 146, et seq., were also dismissed, as were the claims against individual defendants under Title VII, and those pursuant to Puerto Rico Law 69, P.R. Stats Ann. 29, § 1323. Henceforth, on November 13, 2009, the U.P.R. filed a motion for summary judgment (Docket # 79), which Plaintiffs opposed. See Docket # 90. Defendants replied, and Plaintiffs sur-replied. See Dockets ## 100, 113 & 115. Finally, this Court permitted Defendants to oppose Plaintiffs' sur-reply. See Docket # 122.

The underlying facts regarding Ortiz's claims of discrimination are fairly clear-cut, even so, the motions regarding the present motion for summary judgment are extensive. The pleadings stage of the present lawsuit has been characterized by a great deal of to-and -fro between the parties regarding issues that are far from essential to the questions of discrimination that constitute the substance of Plaintiffs'claims. In an effort at parsimony, and to achieve coherence, this Court will limit the following discussion to the facts that directly relate to the hostile work environment and failure to promote claims.

It is of crucial importance to outline the two sets of allegations regarding racially charged comments made by Sandoval. However, first a background on Ortiz's relationship with the Editorial is necessary.

After working for many years in the Resources Center of the U.P.R. as an accountant through a professional services contract, and eventually as a non-permanent Accountant III, Ortiz switched to the Editorial on February 28, 2003. See Docket # 79 at 3 (Statement of

Uncontested Material Facts ("S.U.M.F.")). She entered the Editorial as an Accountant II, and went through a one year probationary period between March 3, 2003, and March 3, 2004. See S.U.M.F., ¶ 10-12.

While the circumstances surrounding the situation are in dispute, Sandoval eventually recommended that her position be made permanent on May 5, 2004. Id. Both sides agree that this was two months after her probationary period's scheduled end date. Accordingly, Plaintiffs argue that this demonstrates Sandoval's alleged predisposition against Ortiz, and retaliation for a complaint she made to the central administration. See Docket # 90 at 10. Furthermore, she presents testimony from then Finance Director, Carlos Gonzalez Luna ("Gonzalez"), who resigned on November 5, 2004, that Sandoval did not want to sign the paperwork to make her position permanent. Defendants deny this, and counter that the extension of her probationary period constituted a harmless delay, and a mere formality. Furthermore, it is undisputed that her position was made permanent retroactive to the date her probationary status was due to expire, that is March 3, 2004. See Docket # 121 at 6-7.

Ortiz also makes other charges based on her employment status, which will be discussed further below. However, it is important to first discuss the elements of the case which most directly situate it in the sphere of a racial discrimination claim. Namely, the two allegations of derogatory language attributable to Sandoval.

Neither party disputes that an incident occurred on October 28, 2004, when during a contentious interchange between Sandoval and Ortiz, the former made tasteless and incendiary comments about both her and Puerto Rico in general in front of Rosa Henche ("Henche"), Marketing Director for the Editorial. See S.U.M.F., ¶ 42. Plaintiff claims Sandoval told Ortiz she should be ashamed of herself for being Puerto Rican, that Puerto Ricans were worthless, that Puerto Rico was a third world country, and that she was a peon. See Docket # 90 at 12. Sandoval admits to having called Ortiz a peon, but denies the other comments. Moreover, Plaintiff admits that after October 28, 2004, she never heard Sandoval make discriminatory, or derogatory, comments about her or other Puerto Ricans. S.U.M.F., ¶ 59; see also Docket # 121 at 28.

Plaintiffs offer testimony from Gonzalez that, on various occasions, he overheard Sandoval maligning Puerto Ricans when he became frustrated about problems at the Editorial. See Docket # 91 at 4. However, Gonzalez did not witness any comments directed at Ortiz, and after a meeting between the two to discuss the issue in April, 2004, he never again witnessed offensive statements from Sandoval. See Docket # 100 at 16.[2] Plaintiffs also assert that Sandoval's prejudices are born out of his status as a foreign national. However, Sandoval was born in New York, and grew up in Mexico, his grandparents were Puerto Rican, and he traveled to the island frequently as a child, and testified that he feels that this is part of his heritage. See S.U.M.F. at ¶ 17.[3]

As a result of the October 28, 2004, incident, Ortiz filed a complaint with the U.P.R.'s administration against Sandoval on November 8, 2004. See S.U.M.F., ¶ ¶ 41-50. This led to a written reprimand, which was incorporated into Sandoval's personnel file, an orientation with the Human Resources department regarding the use of offensive language, and a letter apologizing for his outburst. Id. Accordingly, in October 2005, Sandoval sent a letter apologizing for any offense he may have caused to Ortiz. Docket # 121 at 4.

These comments made by Sandoval constitute the allegations of overtly discriminatory behavior. Plaintiffs' other allegations involve questions regarding her employment status and working conditions. Ortiz's reclassification request is central to the claims. On September 2, 2004, Gonzalez sent a recommendation to the Human Resources Department for Ortiz to be reclassified as an Accountant III, a higher paying position. S.U.M.F., ¶ 32. Sandoval authorized this action on August 30, 2004. S.U.M.F., ¶ 33.

Two other employees from the Editorial were also recommended for, and granted, reclassification. The request for all three coincided with an electoral hiring ban that

---

[2] Plaintiff also includes allegations regarding supposed events witnessed by other employees at the Editorial derived from Gonzalez's testimony. However, these will be struck from the record because they are based on hearsay. See Docket # 91 at 8.

[3] Plaintiff insufficiently contests this fact, arguing he was adopted by a Mexican citizen, and raised in Mexico, and holds Mexican citizenship. However, Sandoval's Puerto Rican heritage is not incompatible with a foreign upbringing.

temporarily prohibited the reclassification of employees in the public sector. While their nationality is unknown, it is admitted by both parties that the other employees recommended for reclassification held union membership cards with the U.P.R. Hermandad de Empleados Exentos no Docentes ("HEEND"), which had signed a collective bargaining agreement exempting its membership from the electoral hiring freeze. S.U.M.F., ¶ 36. Ortiz was not a member of the union at the time Gonzalez made the recommendation, and thus, her petition did not receive an evaluation until after the election period ended in 2005.[4] S.U.M.F., ¶¶ 33-35 & 37. Furthermore, the U.P.R. states that it could not consider openings for Accountant III positions, because they involve supervision, and are thus not subject to the exception granted to non-supervisory members of HEEND. See Docket # 79-8 at 1.

As the pith of Ortiz's failure to promote claim is based on the U.P.R.'s decision to deny her reclassification to Accountant III, this Court will examine the recommendation and evaluation process step by step.

On November 24, 2003, the Board of Trustees of the U.P.R. issued Certification No. 55 granting greater autonomy to the Editorial. S.U.M.F., ¶ 2. Sandoval was hired that same month to manage the transition and reorganization of the Editorial from a departmental dependency of the U.P.R. to an autonomous entity. S.U.M.F., ¶ 15.[5] Gonzalez entered the the Editorial in the newly created Department of Finance, as its director, on February 1, 2004, a position he remained in until November 5, 2004. S.U.M.F., ¶ 19. It is undisputed that he acted as Ortiz's supervisor. Plaintiff argues that the Department of Finance was a mere continuation of the Accounting office, but this assertion is not supported by the record. Nor has she presented any evidence that Gonzalez's position existed before his appointment.

Regardless, in December 2004, Gonzalez stepped down as Finance Director at the

---

[4] Plaintiff alleges that she joined the union after Gonzalez recommended her for reclassification on December 1, 2009. See Docket # 91 at 9. However, she has not presented any evidence to support her conclusion that joining HEEND during the electoral ban would have exempted her from the hiring freeze. In fact, there is good reason to believe it would not have. Accordingly, S.U.M.F. # 37 will be admitted.

[5] Plaintiff denies this fact, but provides no evidence to controvert Sandoval's testimony.

Editorial, and was replaced by Stevenson. During this period, Ortiz took an extended sick leave, and did not return until January 29, 2005. Stevenson's appointment brought with it reorganization in the Finance Department. Upon her return, Stevenson made it clear to both Ortiz and the Human Resources Department that she would no longer engage in supervisory, or administrative functions, as she had during Gonzalez's term as Finance Director. S.U.M.F., ¶ 53. Stevenson also revoked a verbal understanding between Ortiz and Gonzalez regarding an adjusted work schedule.

Defendants admit that during the transition of the Editorial from a U.P.R. dependency to an autonomous entity, Ortiz performed administrative duties. See Docket # 127 at 7. However, during the same period the position of Financial Director was created. Accordingly, Defendants argue that Ortiz's extra functions under Gonzalez were temporary in nature, and justifiably modified by Stevenson to suit the needs of the Editorial under its plan for reorganization. Nevertheless, Ortiz argues that her position was designed as that of a Comptroller, and that her promotion should have made this official. Docket # 91 at 6.

After Ortiz returned from sick leave in January, frictions began regarding her position within the reorganized finance department. Accordingly, on March 16, 2005, Stevenson wrote the Human Resources Department clarifying that he was the direct supervisor of all finance personnel, that he had clarified this point to the staff in a meeting, and that despite this, Ortiz continued asserting that she was a supervisor. See Docket # 91 at 11.

While the recommendation for reclassification comes from an employee's department or dependency, the request is formally analyzed by technical personnel in the U.P.R. Department of Human Resources. S.U.M.F., ¶ 26. After the electoral ban, and Stevenson's aforementioned letter to Human Resources, Ortiz's request for reclassification was analyzed by Astrid Espada, Classification and Compensation Division Manager. S.U.M.F., ¶ 38. She concluded that from the period between September, 2003, and December 6, 2004, Ortiz had performed administrative and supervisory duties beyond those of her position as an Accountant II, but solely during the transition process. S.U.M.F., ¶ 39. Accordingly, the U.P.R. granted a salary adjustment of $1,365, but denied permanent reclasification. Part of

the stated reason for denying Ortiz's request for a promotion to Accountant III was that the extra duties were the result of a transitory process, and that they were no longer required by the Editorial, in light of Stevenson's arrival and the reorganization. Id.

Neither party denies that there were professional frictions between Ortiz and the Editorial's administration. Even Ortiz associates her friction with the Editorial's administration to performance, and work related issues. In her deposition, she stated that, "[a]s long as other fellow Puerto Rican employees did what Sandoval desired, he would not interfere with their employment as he has done with [her]." Dockets ## 121 at 27 & 91 at 5. Unsurprisingly, after the denial of her reclassification, the situation did not improve, but nor did it deteriorate dramatically. As mentioned above, Sandoval made no further racially charged comments after November 8, 2004.

Nevertheless, Ortiz argues that she continued to exercise administrative duties above her pay grade after Stevenson arrived at the Editorial. See Docket # 91 at 13. This is unsubstantiated by the record before this Court, as the document she refers to is an isolated incident, consistent with Defendants theory of a transitory responsibilities. However, another accountant at the Editorial, Anibal Sanabia ("Sanabia") has testified that Stevenson prohibited him from communicating directly with Ortiz. Id. Furthermore, on May 1, 2006, the Editorial hired Agustin Gonzalez ("A. Gonzalez") to act as Assistant Finance Director. See Docket # 91 at 15. Consequently, Ortiz had to move offices to make room for him. S.U.M.F., ¶ 55. She accepts that HEEND approved this action. Docket # 90 at 14.

The series of events described above led Ortiz to feel dissatisfied with Sandoval and Stevenson, who she believes retaliated against her for her allegations of discrimination. Accordingly, she brought the present action on November 17, 2006. See Docket # 1.

**Standard of Review**

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); see also Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005).   In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994); Morales-Figueroa v. Banco Bilbao Vizcaya Argentaria, 550 F. Supp. 2d 220, 224 (D.P.R. 2007).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the non-movant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005)(citing Garside, 895 F.2d at 48 (1st Cir. 1990)); see also SEC v. Ficken, 546 F.3d 45, 51 (1st Cir. 2008).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).  Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).  Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (citing Maldonado-Denis, 23 F.3d at 581).  "The non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . . .  Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the

summary judgment proponent to configure the record is likely to prove fraught with consequence."); Medina-Muñoz, 896 F.2d at 8 (citing Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve.").

**Analysis & Discussion**

*Section 1983*

Before discussing Title VII, this Court finds it necessary to revisit the issue of Plaintiff's claims under 42 U.S.C. Sec. 1983. A plethora of district and circuit courts have found that ". . . § 1983 endure[s] as a separate remedy from Title VII employment discrimination, and that it continue[s] to provide plaintiffs with an independent cause of action through which they can seek redress of constitutional deprivations." Ribot Espada v. Woodroffe, 896 F. Supp. 69, 71 (D.P.R. 1995). Nevertheless, in terms of their official capacities, neither the U.P.R., Antonio Garcia Padilla, Manuel Sandoval, or Hector Stevenson may be sued for damages in a § 1983 action. See Fantini v. Salem State College, 557 F.3d 22, 34 (1st Cir. 2009). However, § 1983 claims against state or municipal employers in their individual capacities may proceed, where those claims arise from violations of constitutional or statutory rights. See Ribot, 896 F. Supp. at 71.

Despite the possibility of using § 1983, Plaintiff has not presented a cognizable theory. She has not made allegations, or presented facts, in her pleadings regarding either a property right, due process, or any other right for that matter. Of course, a § 1983 action for discrimination may be predicated upon the equal protection clause. See, e.g., Lipsett v. University of Puerto Rico, 864 F.2d 881, 896 (1st Cir. 1988). In these circumstances, the First Circuit has ". . . recognized that the analytical framework for proving discriminatory treatment [under Title VII] . . . is equally applicable to constitutional and Title VII claims." Id. (quoting White v. Vathally, 732 F.2d 1037, 1039 (1st Cir. 1984). However, any supervisory liability requires that university officials had ". . . actual or constructive notice of the alleged violations . . ." that would have allowed for condonation or tacit authorization. Garcia v. Municipality of Caguas, 495 F.3d 1, 10 (1st Cir. 2007). Moreover, deliberate acts by a university policy maker

might expose the institution itself to liability. Id.

Given the vague nature of the pleadings, this Court deems that the only § 1983 claim that Plaintiff has possibly stated is for equal protection. In accordance with the abovementioned case law, said claim will be considered concurrently with Plaintiffs' Title VII claims.

*Title VII Claims*

Title VII makes it unlawful for an employer to discriminate against an employee with respect to her terms and conditions of work because of the employee's race, color, sex, national origin, or religion. 42 U.S.C. § 2000e-2(a). Plaintiffs' claims are fundamentally for failure to promote and hostile work environment. Both of these claims constitute discrimination prohibited by this statute. See, e.g., O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001). However, Plaintiffs also bring allegations of retaliation. They allege that the U.P.R. violated Title VII by: (1) refusing to promote Ortiz; and (2) creating a hostile work environment because she is Puerto Rican. She also brings retaliation claims under the same statute alleging that, because she filed a complaint regarding Sandoval's racially charged statements, the U.P.R. denied her a promotion, and stripped her of responsibilities.

*A. Hostile Work Environment*

Title VII hostile work environment claims originally drew upon EEOC precedent in cases of minority employees. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986). Of course, ". . . Title VII does not prohibit racist thoughts, [but] the law does require that employers prevent such views from affecting the work environment either by influencing employment decisions or creating a hostile work environment." Aman v. Cort Furniture Rental Corp, 85 F.3d 1074, 1087 (3rd Cir. 1996). Furthermore, "Title VII requires [ ... ] that the level of incivility or harassment [ ... ] amount to either a tangible or a constructive employment action." Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 37 (1st Cir.2003). It also requires that ". . . the alleged harassment and the employment action [. . .]be causally related." Id.

Accordingly, the comments in a hostile work environment claim must be "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive

working environment." Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1986)(citing Henson v. Dundee, 682 F.2d 897, 904 (11th Cir. 1982)). The racial, or ethnic component of Plaintiff's hostile work environment claim is restricted to a single incident where Sandoval made use of obnoxious language and uncultured stereotypes of Puerto Rico, and its inhabitants. This alone does not create an environment that ". . . would reasonably be perceived, and is perceived, as hostile or abusive. . ." Harris v. Forklift Sys., 510 U.S. 17, 22 (U.S. 1993). Accordingly, ". . .a single act of harassment [unless extremely serious] may not be actionable on its own." National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 115 (2002); Rivera-Martinez v. Puerto Rico, No. 05-2605, 2007 U.S. App. LEXIS 160 (1st Cir. Jan. 4, 2007).

> The test offered by the First Circuit states that a plaintiff must establish the following:
>
> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome [] harassment; (3) that the harassment was based upon [race or ethnicity]; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that [racially or ethnically motivated] conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001).

This Court also cannot ignore the fact that the alleged hostile work environment took place within an institution that is overwhelmingly staffed, from the janitorial service to the presidency, by persons of Puerto Rican descent. The present case includes limited racially charged statements by one member of the U.P.R. and the Editorial's executive personnel. Two sets of allegations have been proffered, one including general statements made by Sandoval, and another involving an incident were offensive language was allegedly directed at Ortiz. This panorama does not support a hostile work environment claim, especially in light of the fact that Plaintiffs admit that following Sandoval's October 28, 2004 outburst, he never again used offensive language with Ortiz. Moreover, no other members of the Editorial's staff have been accused of making anti-Puerto Rican statements. Accordingly, this Court must conclude that the alleged harassment was not nearly sufficiently severe or

pervasive so as to alter the conditions of Ortiz's employment and create an abusive work environment under Title VII. Accordingly, summary judgment shall be **GRANTED** for Plaintiffs' hostile work environment claims, which are hereby **DISMISSED WITH PREJUDICE.**

*B. Disparate Treatment and Failure to Promote*

Plaintiff also alleges that the U.P.R. failed to promote her to an Accountant III because she is Puerto Rican. Plaintiffs claim that there is direct evidence of Sandoval, and the U.P.R.'s, discriminatory animus. However, an offensive comment, or incident, can only constitute evidence of discrimination if, ". . .contemporaneous [to the adverse action] or causally related to . . . the decision making process." Geier v. Medtronic, Inc., 99 F.3d 238, 242 (7th Cir. 1996); see also Cabrera v. Trataros Constr. Inc., 184 F. Supp. 2d 149, 154-155 (D.P.R. 2002). In the present controversy, Sandoval's comments occurred months before the U.P.R. denied Ortiz's promotion, and were not in relation to her petition to be reclassified as an Accountant III. Despite this, Plaintiffs seem to have conflated direct evidence of friction between Sandoval and herself with direct evidence of discriminatory animus. This Court finds that, in the present, Plaintiffs lack direct evidence of discriminatory animus.

As Plaintiff does not have sufficient evidence of direct discrimination, it is necessary to examine her claims of refusal to promote under the McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) burden shifting framework. Applying this approach to a failure-to-promote claim requires showing, "plaintiff (i) is a member of a protected class who (ii) was qualified for an open position for which she applied, but (iii) was rejected (iv) in favor of someone possessing similar qualifications." Rathbun v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004). By the same token, "[o]n summary judgment, the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a question for a factfinder as to pretext and discriminatory animus."Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996); see also Calero-Cerezo v. United States DOJ, 355 F.3d 6, 26 (1st Cir. 2004).

In the present case, there is no controversy regarding Ortiz's qualifications. As such, this Court will assume that she was qualified for promotion. There is, however, controversy regarding the existence of an open position at the Editorial. The Editorial was under a process of reorganization when Ortiz began working there. Gonzalez, the Editorial's first Finance Director, delegated certain administrative and supervisory functions to her, which were beyond her paygrade. However, after Stevenson's appointment, he was made the exclusive supervisor and administrator, and the Human Resources Department determined that Ortiz only performed functions commensurate with an Accountant II. Furthermore, reclassification fell into the realm of the personnel department, which was far removed from the apparent enmities at the Editorial.

Lastly, more than a year went by before the Editorial hired A. Gonzalez as Assistant Finance Director. This is too remote from her personnel action to be considered in her failure to promote claim. Accordingly, this Court concludes that she was not rejected in favor of anyone. Rather, the U.P.R. has proffered a non-discriminatory reason for not reclassifying her, which was that, under the reorganization, Stevenson would act as the sole administrator for the Finance Department. Moreover, Plaintiffs have not provided evidence or allegations allowing this Court to determine if contracting A. Gonzalez was similarly qualified to Plaintiff.

It should be noted that, " to survive a motion for summary judgment on a Title VII disparate treatment claim, a plaintiff must produce evidence that: (1) the employer's articulated reason for laying off the plaintiff is a pretext; and (2) the true reason is discriminatory animus." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 6 (1st Cir. 2000). Of course, "'evidence of [national origin] animus need not be of the smoking gun variety, . . . the totality of the circumstances must permit a reasonable inference that the employer's justification for the challenged action was a pretext for . . . discrimination.'" Feliciano de la Cruz, 218 F.3d at 8 (citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1119 (1st Cir. 1993)). In the case at bar, the totality of the circumstances do not support a disparate treatment, or failure to promote claim. Sandoval's statements alone are

not enough to maintain a claim, where there is no other evidence that the U.P.R. or the Editorial engages in a pattern of failing to promote local employees, or harasses them on the basis of being Puerto Rican. Accordingly, summary judgment shall be **GRANTED** for Plaintiffs' disparate treatment and failure to promote claims, which are hereby **DISMISSED WITH PREJUDICE.**

*C. Retaliation*

Plaintiffs claim that Sandoval, Stevenson, and the U.P.R. retaliated against her by stripping her of duties, and denying her promotion after she made an administrative complaint on November 8, 2004, following an incident between her and Sandoval on October 28 of that same year. After going out on sick leave on December 6, 2004, Ortiz returned to the Editorial the following January, over a month later. By that time, Stevenson had been appointed Finance Director, and the Editorial made the decision that he would be the only supervisor and administrator in the department. This led him to reorganize and limit Ortiz's duties. Consequently, Ortiz's request for promotion to an Accountant III pay grade was rejected by the U.P.R., because she no longer had administrative duties, as she did at the time of her original request for reclassification.

The First Circuit has stated that "[t]o prove a claim of retaliation, a plaintiff must establish that (1) she engaged in protected conduct; (2) she experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action." Calero-Cerezo. 355 F.3d at 25 (citing Gu v. Boston Police Dep't., 312 F.3d 6, 14 (1st Cir. 2002)). There is little controversy that Ortiz complies with the first two steps of this test. To wit, she made a formal complaint to the U.P.R. regarding Sandoval's use of abusive and discriminatory language, and sometime thereafter she suffered an adverse employment action, when Sandoval reduced her responsibilities at the Editorial and the Human Resources department denied her request for promotion to Accountant III.

In light of this, the final question this Court must answer is if there is a causal connection between Ortiz's decision to engage in protected activity, and the adverse employment action. No direct evidence or plausible allegations of a retaliatory conspiracy

has been proffered by Plaintiffs. Nevertheless, temporal proximity between an adverse employment action and protected conduct ". . . is indirect proof of a causal connection between the firing and the activity because it is strongly suggestive of retaliation." Oliver v. Digital Equip. Corp., 845, F.2d 103, 110 (1st Cir. 1998); see also Calero-Cerezo, 355 F.3d at 25. Of course, in cases establishing a *prima facie* case based upon temporal proximity, the time-frame should be very close. Calero-Cerezo, id..

Here, there is sufficient temporal proximity between Ortiz's complaint and the employment action. The complaint dates November 8, 2003, and by late January, Ortiz's responsibilities had been reduced. This period is even shorter when one considers that, for much of the time, she was out on sick leave, and the action occurred immediately upon her return. The eventual rejection of her petition for reclassification to Accountant III also occurred during the process and investigation of her administrative complaint.

A prima facie showing reactivates the McDonnell Douglas analysis. In this situation, ". . . [a] defendant must articulate a legitimate, non-retaliatory reason for its employment decision." Id. at 26. However, it is settled law that "[i]f the defendant meets this burden, the plaintiff must now show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." Id.; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11(1993).  The U.P.R. has identified the reorganization of the Editorial as the reason for reducing Ortiz's duties, and the reduction of these duties as their primary reason for denying her promotion to Accountant III. This is reasonable in light of the fact that Ortiz was hired during a transition, and was performing duties beyond her pay level. It is not improbable to think that at some point the Editorial would reshuffle responsibilities in a newly created department, especially in light of the fact that a new Finance Director was hired. Ortiz's responsibilities were not formal, but instead reflected her working relationship with the previous Finance Director, Gonzalez.  This was not a vested right, and this Court understands that Stevenson did not exceed the administrative discretion afforded to his position.

Finally, because the U.P.R. has proffered a legitimate reason for the employment

**Civil No. 06-2152 (SEC)**                                                                                                                     16
_____

action taken against Ortiz, Plaintiffs ". . . must now show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." Calero-Cerezo, 355 F.3d at 26. Plaintiffs have failed to produce proof that this decision was a sham, and ". . . Plaintiffs cannot meet their burden of proving pretext just by refuting or questioning defendants' articulated reason." Perez Perez v. Key Pharmaceuticals, Inc., 729 F. Supp. 204, 207 (D.P.R. 1989). Therefore, taking into account the evidence as a whole the evidence points strongly against any discriminatory animus on the part of the U.P.R.. In fact, to date Ortiz continues to work at the Editorial, and has averred no further acts of discrimination or retaliation, beyond those related to the reduction of the duties she performed temporarily between 2003 and 2004. Accordingly, the Motion for Summary Judgment on these grounds is **GRANTED,** and Plaintiffs' retaliation claims are **DISMISSED WITH PREJUDICE**.

    **Conclusion**

For the reasons set herein, Defendants' Motion for Summary Judgment is **GRANTED.** Plaintiffs Title VII, and § 1983 claims, which were analyzed concurrently, are **DISMISSED WITH PREJUDICE.** Judgement shall be entered accordingly.

    **SO ORDERED.**

In San Juan, Puerto Rico, this 16th day of June, 2009.

    S/ *Salvador E. Casellas*
    SALVADOR E. CASELLAS
    U.S. Senior District Judge